INLAND AMERICAN WINSTON HOTELS, INC., Plaintiff v. KENNETH R. CROCKETT and ROBERT W. WINSTON, III, Defendants

No. COA10-593

(Filed 7 June 2011)

**Employer and Employee— non-compete agreements—breach of contract claim**

The trial court did not err in a breach of contract case by granting summary judgment in favor of defendants, denying plaintiff's motion for summary judgment, and dismissing plaintiff's complaint with prejudice. There was no genuine issue of material fact because defendants ·did not solicit, recruit, or induce two of plaintiff's former employees to work for defendants in violation of the non-compete agreements. Further, there were no terms in the non-compete agreements preventing defendants from hiring a former employee of plaintiff whom they had not solicited, recruited, or induced for employment.

Appeal by plaintiff from order entered 15 February 2010 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 16 November 2010.

*Moore & Van Allen, PLLC, by Scott M. Tyler, and DLA Piper US LLP, by Jeffrey D. Herschman and Melissa R. Roth, for plaintiff-appellant.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester, Charles E. Johnson, and Richard C. Worf, for defendants-appellees.*

STROUD, Judge.

Inland American Winston Hotels, Inc., ("plaintiff Inland") appeals from an order granting summary judgment in favor of Kenneth R. Crockett and Robert W. Winston, III (referred to collectively as "defendants"). As there were no genuine issues of material fact and defendants were entitled to relief as a matter of law, we affirm the trial court's order granting summary judgment in favor of defendants, denying plaintiff Inland's motion for summary judgment, and dismissing plaintiff Inland's complaint with prejudice.

I. Background

On or about 11 February 2009, plaintiff Inland filed a "First Amended Complaint" against defendants, setting forth two claims for

breach of contract alleging that defendants had breached the terms of their "Non-Compete Agreements" "by soliciting, recruiting, or inducing the employment of" two former employees of plaintiff Inland, Brent West and Brian Fry. Plaintiff Inland requested liquidated damages, "prejudgment interest, costs and attorneys' fees[,]" and for the court to "[e]njoin defendants from further violations of the Non-Compete Agreements[.]" Defendants filed an answer on or about 9 March 2009, denying plaintiff Inland's allegation that they breached their "Non-Compete Agreements" and raising several affirmative defenses, including "the doctrines of estoppel and waiver." On or about 6 October 2009, plaintiff Inland filed a motion for summary judgment. On or about 29 December 2009, defendants also filed a motion for summary judgment. The affidavits, depositions, and documents filed with those motions tended to show that defendants Crockett and Winston were formerly employed by Winston Hotels, Inc. as executive vice president and chief executive officer, respectively. On 1 July 2007, Winston Hotels merged into an entity that became Inland American Winston Hotels, Inc., a subsidiary of Inland American Real Estate Trust, Inc., a publically owned real estate investment trust engaged in the business of owning and operating real properties throughout the country. As part of this merger, defendants Crockett and Winston each executed non-compete agreements, effective 1 July 2007. The relevant portions of the non-compete agreements prohibited defendants "during the period of [their] employment with the Company. and for a period of two years from and after any termination of [their] employment with the Company, . . . [or] without the express written consent of the Company" from

> solicit[ing], recruit[ing] or induc[ing] for employment (or assist or encourage any other person or entity to solicit, recruit or induce for employment), directly or indirectly . . . any officer or non-clerical employee of the Company or any person who was an officer or non-clerical employee of the Company at any time during the final year of the Executive's employment with the Company[.]

Following the merger, defendants terminated their employment with Winston Hotels or its successor plaintiff Inland and established two new companies, Crockett Capital Corporation ("CCC") and Winston Hospitality, Inc. On 29 August 2007, Brent West, plaintiff Inland's chief accounting officer, resigned his employment with plaintiff Inland. On 10 September 2007, defendant Winston signed an employment agreement with Mr. West, hiring him as chief financial officer

for Winston Hospitality, Inc. and CCC. Brian Fry had been employed by Winston Hotels, Inc. as director of development. On 30 June 2007, Mr. Fry was informed that he would not be employed by plaintiff Inland following the merger and that his employment was terminated. Shortly thereafter, Mr. Fry contacted defendant Winston to request assistance in finalizing some of the hotel development projects Mr. Fry had been working on while he had been employed by Winston Hotels, Inc. and agreed to be paid a finder's fee if the development transactions were completed. Defendant Winston agreed to pay Mr. Fry such a fee and, on 10 September 2007, defendant Winston sent Mr. Fry a letter outlining their understanding that Mr. Fry would be paid fees only if and after transactions closed on certain hotel development projects. Sometime after this letter, Mr. Fry obtained fulltime employment with another organization and ceased any involvement on these projects, and he never received any compensation related to the hotel development projects.

On 15 February 2010, the trial court entered a written order denying plaintiff Inland's motion for summary judgment and granting defendants' motion, dismissing plaintiff Inland's complaint with prejudice, and concluding "that there is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law." On 17 March 2010, plaintiff Inland gave written notice of appeal from the trial court's 15 February 2010 order.

## II. Summary Judgment

Plaintiff Inland contends that the trial court erred in denying its motion for summary judgment and granting defendants' motion for summary judgment as there are no genuine issues of material fact and plaintiff Inland is entitled to judgment as a matter of law "because [defendants] solicited, recruited, and/or induced Brent West and Brian Fry in breach of their non-compete agreements."

### A. Standard of Review

The standard of review from a motion for summary judgment is well established:

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' N.C. Gen. Stat. § 1A-1, Rule 56(c). 'A trial court's grant of summary judgment receives *de novo* review on appeal,

and evidence is viewed in the light most favorable to the non-moving party.' *Sturgill v. Ashe Memorial Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

*Mitchell v. Brewer*, —— N.C. App. ——, ——, 705 S.E.2d 757, 764-65 (2011) (quoting *Liptrap v. Coyne*, 196 N.C. App. 739, 741, 675 S.E.2d 693, 694 (2009)). Specifically, plaintiff Inland argues that summary judgment in favor of defendants was in error as (1) defendants breached their non-compete agreements by hiring Brent West and Brian Fry without plaintiff Inland's express written consent; (2) plaintiff Inland did not waive its right to enforcement of the non-compete agreements and "is not estopped from enforcing the Non-compete Agreements[;]" and (3) since summary judgment in favor of defendants was in error and the trial court should have entered summary judgment for plaintiff Inland, the court should determine the damages that should be awarded to plaintiff Inland. We first address plaintiff Inland's arguments regarding defendants' breach of the non-compete agreements, as this issue is dispositive.

B. Breach of the Non-Compete Agreements

Plaintiff Inland contends that the trial court's decision should be reversed and judgment entered in its favor as it "is entitled to summary judgment (and Defendants are not) because there is no question that Messrs. Winston and Crockett breached the Non-Compete Agreements based on the established facts in the record." Plaintiff Inland contends that because defendants executed employment agreements with Mr. West and Mr. Fry, defendant solicited, recruited, or induced them to leave in violation of the non-compete agreements. Plaintiff Inland further argues that the mere extension of a job offer to Mr. West or Mr. Fry "would qualify as solicitation." In the alternative, plaintiff Inland also argues that "there are genuine issues of material fact, making summary judgment in favor of the Defendants inappropriate, and the case should be remanded for trial."

Defendants counter that plaintiff Inland's only argument is that defendants breached their non-compete agreements by hiring Mr. West and Mr. Fry, but "*hiring* may take place without any solicitation or inducement where . . . a covered employee decides to leave without any luring or persuasion by the defendant and then joins the defendant's company, [which is] exactly what happened here." Defendants further argue that plaintiff Inland's "torturing of the words 'induce' and 'solicit' to encompass the act of entering into an

employment contract has no precedent[,]" as "[h]iring can and does occur without any inducement or solicitation[.]" Defendants further contend that summary judgment in their favor was appropriate as "the undisputed facts show that no solicitation or inducement occurred[,]" and "[plaintiff Inland] has advanced no testimonial or documentary evidence to contradict" the sworn statements of Mr. Fry, Mr. West, and defendants that no solicitation or inducement occurred. As the parties' arguments focus on the meaning of the terms in the non-compete agreements, we turn to the interpretation of those terms.

1. Interpretation of the Non-Compete Agreements

Defendants Winston's and Crockett's non-compete agreements have identical provisions regarding hiring plaintiff Inland's employees:

> (b) during the period of his employment with the Company and for a period of two years from and after any termination of his employment with the Company, whether as a result of a termina- tion by the Company or resignation by the Executive, he shall not, other than on behalf of the Company or any successor, with- out the express written consent of the Company or any successor, *solicit, recruit or induce for employment* (or assist or encourage any other person or entity to solicit, recruit or induce for employ- ment), *directly or indirectly* or on behalf of himself or any other Person, any officer or non-clerical employee of the Company or any person who was an officer or non-clerical employee of the Company at any time during the final year of the Executive's employment with the Company, to work for the Executive or any Person with which the Executive is or intends to be affiliated . . .[1]

(Emphasis added). Plaintiff Inland contends that defendants vio- lated the terms of the non-compete agreements by "solicit[ing], recruit[ing], or induc[ing] . . . for employment . . . directly or indirectly" plaintiff Inland's former employees, Brent West and Brian Fry to work for defendants "without the express written consent of [plaintiff Inland.]" Essentially, plaintiff Inland argues that defendants could not "hire" Mr. Fry or Mr. West without "soliciting," "recruiting" or "inducing" them, so that proof of hiring necessarily proves solici- tation, recruiting or inducing. We disagree.

---

1. This section of the non-compete agreements also prohibits defendants from "directly or indirectly encourag[ing] any such person to terminate his or her employ- ment or other relationship with the Company or any successor without the express written consent of the Company." However, plaintiff Inland makes no specific argu- ment that defendants encouraged Mr. West or Mr. Fry to terminate their employment from plaintiff Inland.

**INLAND AM. WINSTON HOTELS, INC. v. CROCKETT**

[212 N.C. App. 349 (2011)]

We note that the terms "solicit, recruit or induce" are not defined in the non-compete agreement. This Court has stated that "[a] contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court. If the agreement is ambiguous, however, interpretation of the contract is a matter for the jury." *Metcalf v. Black Dog Realty, LLC,* —— N.C. App. ——, ——, 684 S.E.2d 709, 719 (2009) (citation omitted). Non-compete agreements, as any contract, "are interpreted according to the intent of the parties. The intent of the parties is determined by examining the plain language of the contract. Extrinsic evidence may be consulted when the plain language of the contract is ambiguous." *Id.* We hold that that the terms in the non-compete agreements are unambiguous. Accordingly, we look to the plain meaning of these terms. *See id.* "Solicit" is defined as (1) "to make petition to[;]" (2) "to approach with a request or plea[;]" (3) "to urge (as one's cause) strongly[;]" (4) "to entice or lure esp. into evil[;]" (5) "to proposition . . . [;]" and (6) "to try to obtain by [usually] urgent requests or pleas[.]" Merriam-Webster's Collegiate Dictionary 1187 (11th ed. 2005). Similarly Black's Law Dictionary defines solicitation as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition[.]" Black's Law Dictionary 1520 (8th ed. 2009). The relevant definition of "recruit" is (1) "to fill up the number of (as an army) with new members[;]" (2) "to increase or maintain the number of[;]" and (3) "to secure the services of[;]" and (4) "to seek to enroll[.]" Merriam-Webster's Collegiate Dictionary 1041 (11th ed. 2005).[2] The relevant definition of "induce" is (1) "to move by persuasion or influence[;]" (2) "to call forth or bring about by influence or stimulation[;]" and (3) "to cause the formation of[.]" Merriam-Webster's Collegiate Dictionary 637 (11th ed. 2005). Similarly Black's Law Dictionary defines inducement as "[t]he act or process of enticing or persuading another person to take a certain course of action." Black's Law Dictionary 845 (8th ed. 2009). We note that all of the above-cited definitions of "solicit, recruit or induce" are similar in that they involve active persuasion, request, or petition.

After a thorough review of the record, we hold that there is no genuine issue of material fact, as defendants did not "solicit, recruit or induce" Brent West or Brian Fry to work for defendants in violation of the non-compete agreements and therefore, defendants were entitled to judgment as a matter of law.

---

2. Although not relevant to this analysis, recruit is also defined as "to enlist as a member of an armed service[;]" and "to restore or increase the health, vigor, or intensity of[.]" Merriam-Webster's Collegiate Dictionary 1041 (11th ed. 2005).

## 2. Brent West

The record on appeal shows that defendants did not "solicit, recruit or induce" Mr. West for employment. Prior to the 1 July 2007 merger of Winston Hotels, Inc. with Inland, Brent West had served as chief accounting officer for Winston Hotels, Inc. After the merger, Mr. West continued with plaintiff Inland and served as executive vice president/chief financial officer. However, Mr. West began having difficulty working with his newly appointed supervisor Michael Broadfoot, and had concerns regarding plaintiff Inland's lack of support for him, as the Inland executives had not executed his employment agreement. Mr. West complained to Thomas McGuinness, Inland's President, about his concerns but no action was taken. On 19 August 2007, Mr. West contacted defendant Winston by telephone and told him he was resigning and asked if defendant Winston would consider hiring him. However, defendant Winston told Mr. West that because he was under a non-compete agreement he could not talk to him about employment and he thought that he could not afford his salary. Again on 27 August 2007, Mr. West went to defendant Winston's office with a draft employment agreement that Mr. West had prepared and defendant Winston did not look at the draft agreement and told him he could not discuss employment with Mr. West "as long as [he] was employed by Inland." On 29 August 2007, Mr. West resigned his employment from plaintiff Inland and agreed to work a two-week notice. That same day, Mr. West called defendant Winston to tell him that he had resigned and to again ask if he would consider employing him. Defendant Winston told him if he had resigned he would talk to him about employment but made no further comments or offers regarding employment. On 4 September 2007, Mr. West approached defendant Winston with a draft employment agreement, and again told him that he had resigned. Defendant Winston told Mr. West he would think about his proposal but made no commitment regarding hiring him. On 10 September 2007, Mr. West approached defendant Winston with another employment agreement which he had prepared. That same day, defendant Winston signed that employment agreement with Mr. West to work for Winston Hospitality and CCC as chief financial officer, starting 17 September 2007. Although defendant Winston did tell Mr. West that while he was employed by plaintiff Inland, he could not discuss employment "as long as [he] was employed by Inland[,]" we cannot say that defendant Winston's statements amounted to a solicitation, recruitment, or inducement as defendants did not make an active persuasion,

request, or petition to Mr. West to leave Inland and work for defendants. In fact, the record clearly shows that Mr. West approached defendant Winston several times for employment and that defendant Winston refused to discuss employment until after Mr. West had resigned from his position with plaintiff Inland. Accordingly, we hold that defendants did not "solicit, recruit or induce for employment" Mr. West in violation of their non-compete agreements and plaintiff Inland's arguments are overruled.

In addressing plaintiff Inland's argument that executing an employment agreement and hiring someone would amount to solicitation, recruitment, or inducement, we note that the terms of defendants' non-compete agreements do not prohibit defendants from hiring certain former employees of plaintiff Inland; it only prohibits them from "solicit[ing], recruit[ing] or induc[ing] for employment" certain employees of plaintiff Inland. If plaintiff Inland wished to have such a provision prohibiting defendants from hiring certain former employees of plaintiff Inland, it could have included a limitation on employing or hiring former employees in the non-compete agreements. Mr. West was unsatisfied with his employment, resigned his employment with plaintiff Inland, approached defendant Winston, and was hired by defendant Winston; his hiring was permitted by the terms of the non-compete agreements. Therefore, plaintiff Inland's argument is overruled.

Plaintiff Inland also contends that defendants solicited Mr. West during the "several meetings with Mr. Winston, during which they discussed Inland and the 'difficulties' and 'stress' Mr. West encountered in working for Inland." In support of its argument, plaintiff Inland points us to the portions of Mr. West's and Mr. Winston's affidavits showing that Mr. West talked to defendant Winston several times regarding employment. However, the record shows that Mr. West approached defendant Winston and defendant Winston told Mr. West that he could not discuss employment, indicating that he was not soliciting Mr. West during these meetings. Plaintiff Inland fails to point us to any specific conversation in the record between Mr. West and defendant Winston in which they specifically discussed "difficulties" and "stress" which would support its argument. Accordingly, plaintiff Inland's argument is overruled.

Plaintiff Inland also contends that defendant Winston violated the terms of his non-compete agreement by first contacting "Mr. West to discuss CCC's and Winston Hospitality's accounting requirements."

However, plaintiff Inland fails to point us to any conversation or action by defendant Winston in support of its argument that would amount to solicitation, recruitment or inducement for employment in violation of his non-compete agreement. Accordingly, this argument is overruled. Therefore, there is no genuine issue of material fact that defendants did not breach their non-compete agreements by "solicit[ing], recruit[ing] or induc[ing] for employment" Mr. West. Thus, defendants were entitled to judgment as a matter of law on this issue.

3. Brian Fry

As to Brian Fry, plaintiff Inland contends that defendants hired Mr. Fry as their director of development and that "alone . . . constitutes a solicitation in violation of the Non-Compete Agreements." Like Mr. West, the record on appeal shows that defendants did not "solicit, recruit or induce" Mr. Fry for employment. Mr. Fry was director of development for Winston Hotels for about a year, from 2006 to 2007, prior to the merger with plaintiff Inland. Mr. Fry learned that he would not be a part of the company post-merger. In fact, plaintiff Inland did not retain any of the development employees from Winston Hotels, Inc., including Mr. Fry, who was terminated on 30 June 2007. Following his termination, Mr. Fry reached out to defendant Winston. Mr. Fry stated that he "express[ed] interest" to defendant Winston "in helping in any way [he] could" not for a salary but possibly for payment after the hotel development projects were complete. Just as with Mr. West, the record on appeal shows that Mr. Fry approached defendant Winston for employment and defendants did not make any active persuasion, request, or petition to Mr. Fry for employment. Accordingly, we hold that there was no genuine issue of material fact as defendant's did not "solicit, recruit or induce for employment" Mr. Fry in breach their non-compete agreements. As stated above, there were no terms in the non-compete agreements preventing defendants from hiring a former employee of plaintiff Inland whom they had not solicited, recruited or induced for employment.[3] Thus, defendants were also entitled to judgment as a matter of law on this issue.

---

3. The only case cited by plaintiff Inland in support of its argument that the mere extension of a job offer to Mr. West or Mr. Fry "would qualify as solicitation" is the unpublished United States District Court for Middle Tennessee case *International Security Management Group, Inc. v. Sawyer*, 2006 U.S. Dist. LEXIS 37059, *48 (M.D. Tenn. 2006). We do not find this case persuasive. First, it is an unpublished case from a trial court. In addition, the facts are quite different. The defendant former employee signed a non-compete agreement not to "solicit" current employees to work for a competitor, but then left the plaintiff company, advertised in a local newspaper, and interviewed the current employees of the plaintiff company, but did not offer them jobs.

## III. Conclusion

As the evidence forecast by plaintiff demonstrates no genuine issue of material fact that defendants did not violate the terms of their non-compete agreements, they were entitled to judgment as a matter of law. Accordingly, we need not address plaintiff Inland's arguments as to defendants' affirmative defenses of estoppel or waiver or their argument as to damages. We affirm the trial court's order granting summary judgment as to defendant, denying summary judgment as to plaintiff Inland, and dismissing plaintiff's complaint.

AFFIRMED.

Judges BRYANT and BEASLEY concur.

The Court noted that the extension of a job offer to a current employee of the plaintiff "alone would qualify as solicitation, as it constitutes 'an instance of requesting or seeking to obtain something.' " *Id.* In contrast, here, defendants made no advertisement or solicitation to Mr. West or Mr. Fry; Mr. West and Mr. Fry approached defendant Winston for employment. Neither Mr. West nor Mr. Fry were current employees of plaintiff Inland when they discussed employment with defendants, and there was no evidence to show that defendants offered Mr. West or Mr. Fry employment while they were still employed by plaintiff Inland. Therefore, *International Security Management Group, Inc.* is inapplicable to the facts before us.